IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHERN POLYMER, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 2:15-cv-01696-AJS ) |
| MASTER EXTRUSION, LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT MASTER EXTRUSION, LLC'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), Defendant Master Extrusion, LLC ("Master Extrusion") moves this Honorable Court to dismiss this Action for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this Action for the convenience of the parties and the witnesses pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Northern District of Alabama or the United States District Court for the Northern District of Georgia, either of which would be a proper and more appropriate venue for the parties to litigate this dispute. In support of this motion, Master Extrusion states as follows:

### I.  INTRODUCTION

1.  This matter arises out of contractual disputes between two out-of-state companies that bear no relationship to Pennsylvania: Master Extrusion, an Alabama limited liability company, and Southern Polymer, Inc. ("Southern Polymer"), a Georgia corporation.

2.  On December 28, 2015, Southern Polymer initiated this Action seeking to recover amounts on certain invoices and also seeking a declaratory judgment that Master Extrusion is limited in the amounts it can recover for the damages caused by Southern Polymer's delivery of nonconforming products based upon terms and conditions that are not part of the sales contract

for that product and notwithstanding that Southern Polymer misrepresented the quality and character of such product in order to induce Master Extrusion to purchase those goods.

3.     Southern Polymer filed suit in this Court although neither the parties nor the transactions at issue have any ties to or relation to Pennsylvania and this Court.

4.     On February 29, 2016, Master Extrusion filed a Motion to Dismiss this Action due to lack of jurisdiction and improper venue and also because Southern Polymer lacked standing to pursue this Action in Pennsylvania due to its failure to register with the Pennsylvania Department of State.

5.     On March 9, 2016, Southern Polymer filed an Amended Complaint, which fails to overcome the fatal deficiencies in the pleading previously identified by Master Extrusion, namely by failing to plead that it has registered with the Pennsylvania Department of State as required to maintain this Action here or meeting its burden to establish that Master Extrusion has the requisite contacts with Pennsylvania for this Court to have jurisdiction over it.

6.     In the Amended Complaint, Southern Polymer once again relies solely on a forum selection clause as the basis for venue and jurisdiction. Am. Complaint, ¶¶ 11-12. Southern Polymer does not contend that Master Extrusion expressed its assent to the forum selection clause contained in terms and conditions sent after the parties had consummated an agreement but instead that Master Extrusion "consented" to venue in and the jurisdiction of this Court by merely accepting its products. *Id.*

7.     Southern Polymer relies upon a forum selection clause, which is not even a part of the parties' agreement, as the sole basis for this Court's jurisdiction over Master Extrusion.

8.     Southern Polymer does not even contend, nor could it, that if the forum selection clause is not part of the parties' agreement, this Court is a proper jurisdiction for this Action.

9. Notwithstanding its contentions., Southern Polymer does not attach any writing prepared or signed by Master Extrusion, let alone assert any express assent by Master Extrusion, and instead relies on its own invoices that were sent well after the parties had reached agreement and that purport to add additional terms and conditions to the parties' agreement. Under applicable Pennsylvania law, such terms are not part of the contract between the parties. *See* 13 Pa.C.S.A. § 2207; *Willow Valley Manor v. Trouvailles, Inc.*, 977 F. Supp. 700, 704 (E.D. Pa. 1997) ("[E]xpress assent is necessary to a finding of conditional acceptance and the mere repeated sending of a writing containing additional terms does not, without more, give rise to modification of the existing agreement.").

10. Case law from this Court and the Third Circuit makes clear that the forum selection clause is not part of the parties' agreement and thus does not and cannot form the basis for jurisdiction over Master Extrusion. *See, e.g., TRE Servs., Inc. v. U.S. Bellows, Inc.*, No. 2:12-CV-00663, 2012 WL 2872830 (W.D. Pa. July 12, 2012) (Schwab, J.) (conducting a Section 2-207 analysis to determine that a forum selection clause contained in plaintiff's purchase order was an additional material term not binding on defendant).

## II. FACTUAL BACKGROUND

11. Master Extrusion is a limited liability company organized and operating under Alabama law with a registered office and principal place of business at 632 Smith Road Albertville, Alabama 35950 and all members of Master Extrusion are citizens of Alabama. *See* the Affidavit of Reuben Rice Fryer III (the "Fryer Affidavit"), attached hereto as Exhibit A, ¶¶ 5-7.

12. Master Extrusion is a fully functioning polyethylene film operation that services clients' needs for blown film, including collation shrink film. *Id.* at ¶ 8.

13. Southern Polymer is a corporation organized and operating under Georgia law with a principal place of business located at 6190 Powers Ferry Road, Suite 290, Atlanta, Georgia 30339. Am. Complaint, ¶ 4.

14. As pled in its Amended Complaint, Southern Polymer offers producer-branded prime, Southern Polymer-branded prime, and wide-specification polyethylene, polypropylene, PET resins and polystyrene to a diverse array of markets for extrusion, blow molding, injection molding, and compounding activities. Am. Complaint, ¶ 17.

15. Master Extrusion has conducted occasional business with Southern Polymer for approximately three years. Fryer Affidavit, ¶ 22. The parties have not entered into a master contract and instead, each individual sale was a separate transaction.

16. In the Amended Complaint, Southern Polymer references six invoices (Nos. 0021978, 0022951, 0022952, 0023554, 0023555, and 0023637), which relate to a series of transactions by and between Southern Polymer and Master Extrusion between April, 2015 and August, 2015 (the "Transactions").

17. Regardless, all of the negotiations and communications relating to the Transactions occurred between Southern Polymer in Georgia and Master Extrusion in Alabama. *Id.* at ¶ 23. Neither party resides in or maintains offices in Pennsylvania, nor did any performance (or alleged breach) of the contracts occur in Pennsylvania.

18. In clear recognition of the fact that neither these parties nor the Transactions have any connection to Pennsylvania, in the Amended Complaint, Southern Polymer added wholly irrelevant allegations regarding its affiliated parties, who are neither parties to this Action nor the Transactions. *See* Am. Complaint, ¶¶ 5-7. Whether Southern Polymer's parent holding

4

company or an affiliated company is a Pennsylvania company makes no difference because such entities are neither parties to this case nor to the Transactions.

19. It is undisputed that Master Extrusion did not negotiate or contract with Audia Plastics Holdings, Inc. (parent corporation) or Audia International, Inc. (family of companies Southern Polymer is purportedly a member of). Master Extrusion's dealings were with Southern Polymer **only** and all of the interactions relating to the Transactions took place between Seth Stewart in Georgia on behalf of Southern Polymer and Bob Chambliss in Alabama on behalf of Master Extrusion. Fryer Affidavit, at ¶ 28.

20. None of the negotiations or performance of the Transactions took place in Pennsylvania. In fact, there are no connections between Pennsylvania and these Transactions. The parties did not discuss or agree to a forum selection clause or limitation of liability clause with respect to these Transactions. *Id.* at ¶ 29.

A.  **Contacts Regarding These Transactions.**

21. Each of the Transactions originated in the same general way. Southern Polymer from Georgia would contact Master Extrusion in Alabama about the availability of product to sell and thereafter, the parties would negotiate via telephone and text message until a deal was struck. Fryer Affidavit, ¶ 25.

22. During those negotiations, there was no discussion of a forum selection or limitation of liability clauses. *Id.* at ¶ 29.

23. Once an agreement was reached in which Southern Polymer would sell a specific product to Master Extrusion at an agreed-upon negotiated price, Master Extrusion confirmed the terms agreed upon by submitting a Purchase Requisition/Purchase Order to Southern Polymer. *Id.*

24. Master Extrusion **only** submitted a Purchase Requisition/Purchase Order to Southern Polymer **after** an agreement had been reached by the parties. *Id.* Thus, the documents exchanged between the parties were confirmatory documents not offers/acceptances because the parties already reached agreement before the Purchase Requisition/Purchase Order even was sent.

25. On the same day that the Purchase Requisition/Purchase Order was sent, Southern Polymer would acknowledge and confirm the Order via an Order Acknowledgment. *Id.*

26. Between one to five days after the parties reached agreement as confirmed in the exchange of the Purchase Requisition/Purchase Order and the Order Acknowledgement, Southern Polymer would send an Order Confirmation to Master Extrusion's purchasing department and thereafter Southern Polymer would ship the product along with a Waybill and then submit the subject Invoices. *See* Exhibit I to Fryer Affidavit.[1]

27. With respect to the Transactions, the parties had a firm, binding agreement for the sale of the specified product prior to the issuance of the Purchase Requisition/Purchase Order by Master Extrusion. Fryer Affidavit, ¶ 27.

28. As confirmed by the parties' course of dealings, the Purchase Orders were not offers but instead were confirmations of the already consummated deal. *Id.*

29. Likewise, the Order Acknowledgements from Southern Polymer simply confirmed that Southern Polymer had contracted to sell the agreed-upon product per the terms in the Purchase Requisition/Purchase Order. *Id.*

---

[1] Southern Polymer attached to as Exhibits to its Amended Complaint copies of the Order Confirmations related to only four of the six identified invoices, Invoice Nos. 0021978, 0023554, 0023555, 0023637, and failed to attach the Purchase Requisitions/Purchase Orders, Order Acknowledgments and Waybills for each of the Transactions, which were exchanged between the parties for each individual sale.

30.     Notably, Southern Polymer never failed to ship product to Master Extrusion or attempted to change the price or quantity of the product once Master Extrusion submitted a Purchase Requisition/Purchase Order, although with respect to the April 15, 2015 Order, the product shipped was below grade and not as represented. *Id.*

**B.     Facts Related to Southern Polymer's Claims against Master Extrusion.**

31.     The legal dispute between Southern Polymer and Master Extrusion originated only after Master Extrusion learned that Southern Polymer had misrepresented the quality and character of certain resin sold by it to Master Extrusion in April 2015. Master Extrusion purchased and processed this product based upon these false inducements, and the resale of the film created from the nonconforming resin purchased from Southern Polymer has caused substantial damages to Master Extrusion.

32.     Southern Polymer's declaratory judgment claim (Count III) centers on the April 2015 sale by Southern Polymer to Master Extrusion of 197,200 pounds of a specific resin, TR-130, which Master Extrusion subsequently discovered was not as represented causing damages to Master Extrusion. *Id.* at ¶¶ 27-32.

33.     In Counts I and II, Southern Polymer has alleged entitlement to payment of amounts relating to five (5) separate deliveries of resin made between July 2015 and August 2015 by Master Extrusion from Southern Polymer for medium density polyethylene. *Id.* at ¶¶ 19-25.

34.     All negotiations and communications relating to the Transactions referenced in the Amended Complaint occurred between Southern Polymer in Georgia and Master Extrusion in Alabama. Fryer Affidavit, at ¶ 23.

35.     None of the Transactions conducted between Master Extrusion and Southern Polymer have any connection to Pennsylvania. The Transactions referenced in the Amended Complaint relate to sales made by Southern Polymer from its Georgia offices to Master Extrusion in Alabama. *Id.* at ¶ 24.

36.     The products sold pursuant to the Transaction were shipped from Texas to Master Extrusion in Alabama. *See* Exhibit 1 to Fryer Affidavit.

### III.  ARGUMENT

**A.  Southern Polymer May Not Maintain an Action in this Court Because It Is Not Registered to Do Business in Pennsylvania.**

37.     By its own admission, Southern Polymer is a Georgia corporation with a principal place of business in Georgia. Am. Complaint, ¶ 4.

38.     Moreover, a search of the Pennsylvania Department of State records confirms that Southern Polymer has not even registered to do business in Pennsylvania. *See* Exhibit B hereto.

39.     Accordingly, Southern Polymer may not "maintain an action" in the state or Federal Courts of Pennsylvania, and this Action should be dismissed. *See* 15 Pa.C.S.A. §411(b) (a foreign entity "may not maintain an action or proceeding in this Commonwealth unless it is registered to do business under this Chapter"); *see also Generational Equity LLC v. Schomaker*, 602 F. App'x 560, 562 (3d Cir. 2015) (recognizing that the Pennsylvania statute has been applied to district courts sitting in Pennsylvania).

**B.  The Court Should Dismiss Southern Polymer's Amended Complaint Against Master Extrusion for Lack of Personal Jurisdiction under Rule 12(b)(2).**

    **1.  Master Extrusion Is Not Subject to the Jurisdiction of this Court.**

40.     Master Extrusion is an Alabama limited liability company that does not conduct business in Pennsylvania. Fryer Affidavit, at ¶¶ 5, 11.

41. Because Master Extrusion does not reside in or conduct any business in Pennsylvania, let alone any systematic and continuous business, general *in personam* jurisdiction does not exist over Master Extrusion. 42 Pa. C.S.A § 5301; *Heinrich v. Serv. Corp. Int'l*, No. 09-CV-0524, 2009 WL 2177229, at *1 (W.D. Pa. July 22, 2009) (Schwab, J.).

42. Specific *in personam* jurisdiction does not exist over Master Extrusion either because Master Extrusion has not purposefully directed any of its activities at Pennsylvania. 42 Pa. C.S.A. § 5322; *Heinrich*, 2009 WL 2177229, at *2. In fact, none of the Transactions have any connection to Pennsylvania, and Southern Polymer's claims do not arise out of or relate to any activity with Master Extrusion that is, in any way, connected to Pennsylvania. *See* Fryer Affidavit, at ¶¶ 24, 29.

### 2. The Forum Selection Clause Is Not Part of the Parties' Agreement, and Thus Cannot Be the Basis for Jurisdiction.

43. Further, the forum selection clause included in Terms and Conditions sent by Southern Polymer to Master Extrusion *after* the parties had entered their agreement is not part of the parties' contracts, is unenforceable, and clearly does not subject Master Extrusion to the jurisdiction of this Court. *See* 13 Pa.C.S.A. § 2207(b); *TRE Servs., Inc. v. U.S. Bellows, Inc.*, No. 2:12-CV-00663, 2012 WL 2872830 (W.D. Pa. July 12, 2012) (Schwab, J).

44. Even assuming *arguendo* that the Order Confirmation was a conditional acceptance (it is not), *see* Am. Complaint, at ¶ 13, the additional boilerplate Terms and Conditions sent by Southern Polymer to Master Extrusion, which include both a forum selection clause or limitation of liability clause, would not become part of their agreement under Section 2207. 13 Pa.C.S.A. § 2207(c).

45. Southern Polymer's theory on the contract formation and the enforceability of the forum selection clause — an additional term that materially alters the contract — is expressly

9

rejected by the UCC and under Pennsylvania law. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 99 (3d Cir. 1991) ("UCC § 2–207 establishes a legal rule that proceeding with a contract after receiving a writing that purports to define the terms of the parties' contract is not sufficient to establish the party's consent to the terms of the writing to the extent that the terms of the writing either add to, or differ from, the terms detailed in the parties' earlier writings or discussions."); *CECG, Inc. v. Magic Software Enterprises, Inc.*, 51 F. App'x 359, 364 n.7 (3d Cir. 2002) ("Even if acceptance were expressly conditional on assent to these terms, and thus there were no written contract, the conduct of the parties established a contractual relationship. UCC § 2–207(3) provides that the conduct of both parties can establish a contract, and that, to the extent that there is no agreement, the UCC fills any gaps in the contract."); *Willow Valley Manor v. Trouvailles, Inc.*, 977 F. Supp. 700, 704 (E.D. Pa. 1997) ("The evidence further demonstrates that at no time did Manor expressly assent to incorporation of the additional terms printed on the back of defendant's acknowledgment form and invoices. Manor simply "did not object.").

C. **The Court Should Dismiss Southern Polymer's Amended Complaint Against Master Extrusion under Rule 12(b)(3) Because the Western District of Pennsylvania Is Not a Proper Venue for This Dispute.**

46. Even if Master Extrusion was subject to *in personam* jurisdiction of this Court, Southern Polymer's Amended Complaint should be dismissed because venue in this Court is improper as Master Extrusion does not reside within this judicial district and none of the events or omissions giving rise to Southern Polymer's claims occurred here. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 12(b)(3); *see generally Bockman v. First Am. Mktg. Corp.*, 459 Fed. App'x 157, 161-62 (3d Cir. 2012).

D. **In The Alternative, The Case Should Be Transferred for the Convenience of the Parties and the Witnesses.**

47. Alternatively, even if this Court had jurisdiction over Master Extrusion (it does not) and the Western District of Pennsylvania was a proper venue (it is not), this Court should nevertheless transfer this Action for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a) to either the Northern District of Alabama or the Northern District of Georgia, both of which would be proper and more appropriate venues for the parties to litigate these disputes between an Alabama company and a Georgia company regarding Transactions negotiated in and agreed to in Alabama and Georgia regarding products shipped from Texas to Alabama, which have no connection to Pennsylvania. 28 U.S.C. § 1404(a); *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 2:11-CV-1338, 2013 WL 1180312, at *24 (W.D. Pa. Mar. 20, 2013).

48. As graphically illustrated below, the Transactions at issue have no ties or relationship to Pennsylvania.

|  | Alabama | Georgia | Pennsylvania |
|---|---|---|---|
| Place of Organization/ Incorporation | Master Extrusion | Southern Polymer |  |
| Registered Office | Master Extrusion | Southern Polymer | Neither party registered in Pennsylvania. |
| Employees, officers and members | Reside and work in Alabama | Reside and work in Georgia | None |
| Principal Place of Business | Master Extrusion | Southern Polymer |  |
| Negotiations regarding the Transactions | Yes | Yes | No |
| Purchase Requisition for the Transactions | Sent From Albertville, Alabama | Received in Atlanta, Georgia |  |

11

|  | Alabama | Georgia | Pennsylvania |
|---|---|---|---|
| Purchase Orders for the Transactions | Sent From Albertville, Alabama | Received in Atlanta, Georgia |  |
| Order Acknowledgment for the Transactions | Received in Albertville, Alabama | Sent from Atlanta, Georgia |  |
| Order Confirmation for the Transactions | Received in Albertville, Alabama | Sent from Atlanta, Georgia |  |
| Invoices for the Transactions | Received in Albertville, Alabama | Sent from Atlanta, Georgia |  |
| Product Shipment[2] | Received in Albertville, Alabama |  |  |

49. The Northern District of Alabama, which geographically embraces Albertville, Alabama, or the Northern District of Georgia, which geographically embraces Atlanta, Georgia, are proper venues (unlike the Western District of Pennsylvania) and are also the most convenient forums to adjudicate this dispute and Master Extrusion would not contest jurisdiction over it in either of those jurisdictions.

50. Furthermore, Southern Polymer's claims arose in Alabama and/or Georgia, all records regarding the Transactions are maintained in Alabama and Georgia, Alabama and/or Georgia are mutually convenient for the parties, and these districts are more convenient forums for any non-party witnesses.

51. Master Extrusion incorporates its accompanying Memorandum of Law and Affidavit of Reuben Rice Fryer III in Support of its Motion to Dismiss for Lack of Jurisdiction and Venue or, in the Alternative, to Transfer.

---

[2] The products were sent by Southern Polymer from Houston, Texas to Master Extrusion in Albertville, Alabama.

WHEREFORE, Defendant Master Extrusion, LLC respectfully requests that the Court dismiss this Action for lack of personal jurisdiction and improper venue, or, in the alternative, transfer this Action to either the United States District Court for the Northern District of Alabama or the United States District Court for the Northern District of Georgia.

Date: March 14, 2016

By /s/Robert D. Finkel
Robert D. Finkel, Esquire
Pa. I.D. #71130
robert.finkel@bipc.com
Bridget J. Daley, Esquire
Pa. I.D. #316117
bridget.daley@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041
*Attorneys for Defendant Master Extrusion, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Transfer has been served upon the following counsel of record via the Court's ECF System this 14th day of March 2016:

>Mary-Jo Rebelo, Esquire
>Houston Harbaugh
>Three Gateway Center, 22nd Floor
>401 Liberty Avenue
>Pittsburgh, PA  15222

*/s/Robert D. Finkel*